Edward D. Fagan, Pro Se
590 NE Wavecrest Way
Boca Raton, FL 33432
Tel. (561) 757-5432
Email: faganinternational@gmail.com

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

In Re:

| | |
|---|---|
| Application of EDWARD D. FAGAN pursuant to 28 U.S.C. § 1782 for Judicial Assistance in obtaining evidence from J.P. MORGAN CHASE BANK and CITIBANK N.A., and JOHNBULL EJOVI (J.P. Morgan Chase Bank Account Holders) And CTS GLOBAL SUPPLY CHAIN SOLUTIONS (Citibank Account Holder) for use in a Foreign Tribunal and Proceeding | SA-19-MC-00111-FB |

## TO THE HONORABLE UNITED STATES DISCTRICT JUDGE FRED BIERY:

### OBJECTIONS TO FEBRUARY 28, 2019 REPORT AND RECOMMENDATIONS OF UNITED STATES MAG. JUDGE HONORABLE ELIZABETH S. ("BETSY") CHESTNEY (DE 5) REGARDING DE 1 - APPLICATION FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782 TO AID IN FOREIGN PROCEEDING

EDWARD D. FAGAN (hereinafter "Applicant"), acting as a pro se Applicant, hereby makes the following objections to the February 28, 2019 Report & Recommendation (DE 5) denying Applicant pro se's application for limited judicial assistance pursuant to 28 U.S.C. § 1782 to aid in the South African Police Services Foreign Proceeding (hereinafter "Foreign Proceeding" or "SAPS Case # 3471/1/2019") and respectfully shows the Court the following:

### I.   OBJECTIONS ARE TIMELY

The due date for these objections is March 19, 2019.  Magistrate Judge Elizabeth S. ("Betsy") Chestney (hereinafter "Magistrate Judge") issued DE 5 on February 28, 2019.  At that time, I was in South Africa meeting with Captain Eric Chiloane of the South African Police

1   Services – Serious Commercial Crimes Unit (hereinafter SAPS) – regarding the investigation –

2   SAPS Case # 3471/1/2019 - that is ongoing in South Africa and the prosecution that the SAPS

3   intend to launch.   On March 5, 2019, after I returned home from South Africa to receive the

4   Clerk's office certified mail with service of the Magistrate Judge's Report and Recommendation

5   (hereinafter "R & R").   *See Exhibit 1 – Certified Mail Envelop showing mailing on February 28,*

6   *2019 – which I received on March 5, 2019.*   As such, the deadline for objections is March 19th.

7   These objections are filed within the fourteen (14) day period as permitted by the FRCP and the

8   Local Rules of this Court. [1]

9    II.    **SUMMARY OF MAGISTRATE JUDGE'S ERRONEOUS FINDINGS**
10          **IN REPORT & RECOMMENDATION-DE 5 EXPLAINING WHY**
11          **§ 1782 APPLICATION-DE 1 SHOULD BE DENIED**
12
13   The Magistrate Judge's R& R - DE 5 is based on the following erroneous findings:

14          a.    <u>DE 5, p. 2, last 2 lines, penultimate ¶</u> - *"The Court should deny Fagan's*

15   *application because he has not demonstrated that the discovery sought is for use in a*

16   *proceeding before a foreign tribunal"*;

17          b.    <u>DE 5, p. 3, 2nd ¶</u> - *"Fagan attaches a number of documents in support of his*

18   *application: documents on South African Police Service letterhead and correspondence and*

19   *other related documents relating to the inheritance scheme.* <u>*These documents, however, do*</u>

20   <u>*not demonstrate that there is an actual criminal prosecution pending in South Africa related*</u>

21   <u>*to Fagan's allegations.*</u>  *Rather, the Court has before it a mostly illegible copy of a*

22   *handwritten complaint Fagan himself authored and directed to the South African Police*

23   *Service in January 2019"*. Emphasis added;

---

[1]      I received my ECF credentials on March 5, 2019.  I had no way of knowing of the February 28,
2019 R & R - DE 5 until it was served on me by Certified Mail.  From this point forward, I will file
electronically and can receive electronic notifications of docket filings in this matter.

1

       c.     <u>DE 5, p. 3, 1st ¶, 3rd line</u> - *"Fagan admits that he is utilizing Section 1782 to*

2

*"follow the money" in order to identify the persons and entities committing scheme to*

3

*defraud him and others and he intends to use the information to develop other criminal*

4

*complaints in the United States and Canada.";*

5

       d.     <u>DE 5, p. 3, last ¶, 1st three lines</u> - *"Although evidence may be produced pursuant*

6

*to Section 1782 even in the absence of a pending foreign adjudicative proceeding, there must*

7

*at least be some indication that such proceedings 'were within reasonable contemplation' at*

8

*the time the application was made";*

9

       e.     <u>DE 5, p. 4, 1st ¶</u> - *"Fagan's supplemental declaration still falls short of*

10

*demonstrating that a foreign adjudicative proceeding is 'within reasonable contemplation,'*

11

*establishing only that foreign investigative authorities in South Africa are doing their due*

12

*diligence to determine whether Fagan's complaint has any merit";*

13

       f.     <u>DE 5, p. 5, 1st full paragraph, 1st four lines</u> - *"The Court should not permit a self-*

14

*declared victim of a fraudulent scheme to utilize Section 1782 in the hopes it might possibly*

15

*aid an investigation by the South African Police at some time in the future.  To do so would*

16

*be to countenance the very kind of 'fishing expedition' district Courts are counseled to guard*

17

*against."; and*

18

       g.     <u>DE 5, p. 5, last two lines of paragraph before "Conclusion and Recommendation"</u>

19

- *"In light of these concerns, Fagan's request for extensive bank records and account*

20

*information is unduly burdensome and should not be granted".*

21

      As explained below, DE 5 is based on a mistaken interpretation of the facts as to why it is

22

that the Application was made, the status of The SAPS Case # 3471/1/2019 investigation and

23

that the evidence sought in this Application is limited to specific documents that will assist in

1    SAPS Case # 3471/1/2019 and the FBI foreign proceedings.

2           It is my belief that the fraud and crimes against my partners and me, must be stopped and

3    all persons who committed the offenses and broke the law, should face criminal liability. [2]   To

4    that end, DE 1 was filed so I can assist (i) the South African authorities in their investigation and

5    prosecution of SAPS Case # 3471/1/2019 and (ii) FBI in its investigation and future prosecution;

6    and (iii) any other investigations as may exist or be filed in the future. This includes (i) the South

7    Africa woman (Cynthia Medeiros) who owned, operated and/or controlled the fake domain name

8    and email addresses; (ii) the persons who the FBI is investigating; (iii) the persons/entities

9    behind (i) the transfers to the bank accounts identified in Application (DE 1, pp. 9 – 10, ¶ 31(b);

10   and the persons/entities behind the fake domain names and email address identified in this

11   Application (DE 1, pp, 6-8, ¶¶ 21 – 23).

12          As explained below, the evidence sought in DE 1 is needed and helpful to (i) assist in the

13   investigation and prosecution of SAPS Case # 3471/1/2019; (ii) the FBI investigation; and (iii)

14   any other investigation.  It will also help bring these persons / entities to justice the

15   persons/entities behind and/or who/which benefitted from the crimes against my partners and

16   me. Furthermore, this evidence that may not be available through any source other than this

17   Application.

18          Depending upon the outcome of SAPS Case # 3471/1/2019, FBI's investigations and

19   prosecutions, there will be damage claims against the persons/entities who are/were behind the

20   fraud and crimes against my partners and me. [3]  Evidence received through this Application will

21   assist the Foreign Proceedings by the SAPS, FBI and others in the existing and future

---

[2]    The SAPS investigators and FBI Special Agent and AUSA share this belief.
[3]    To the extent civil damage claims are appropriate to hold these persons/entities responsible, they will be filed in the future.

1  investigations and prosecutions; it may also be used in the potential future civil damage claims.

2  See *Glock v. Glock Inc., et al.*, 797 F. 3d 1002 (11th Cir. 2015).

3      The evidence sought in this Application as to the accounts identified in DE 1, pp. 9 – 10,

4  ¶ 31(b) from witnesses Chase Bank, Citibank, Johnbull Ejovi and CTS Global Supply (non-

5  parties to the foreign proceedings), is (i) information/evidence that will assist with SAPS Case #

6  3471/1/2019 and the FBI case with their ongoing investigations; and (ii) the evidence requested

7  is not "overly burdensome" and is limited to 13 very specific transfers during an 8 month period

8  in 2017.  The SAPS and FBI believe the evidence sought in this Application will assist them in

9  identifying the persons/entities that are behind, who committed crimes and who profited from the

10  crimes that The SAPS and FBI are investigating for the fraud and crimes to which my partners

11  and I fell victim.  Further, the SAPS and the FBI have informed me that the evidence to the

12  accounts identified in DE 1, pp. 9 – 10, ¶ 31(b) may not be available from any other source.

13  **III.   FACTS UPON WHICH THESE OBJECTIONS ARE BASED**
14  **AND ADDITIONAL EVIDENCE TO SUPPORT THE COURT'S**
15  **GRANT OF DE 1 APPLICATION FOR § 1782 JUDICIAL ASSISTANCE**
16
17      A. **Introduction**

18      The Magistrate Judge's R & R – DE 5 recommendations fall into the following three

19  categories. Category 1 – No evidence of actual foreign proceeding "within reasonable

20  contemplation" (DE 5, p. 3). Category 2 – Application is a "fishing expedition" in hopes of

21  finding evidence to help convince South African authorities to open an investigation/prosecution

22  or to use to file additional criminal complaints (DE 5, p. 5). Category 3 – Document requests for

23  bank records and account information is "unduly burdensome" (DE 5, p. 5, last sentence before

24  "Conclusion and Recommendation").  As explained below, the Magistrate Judge findings were

25  in error and this Court should uphold these objections and grant the Application.

**B.  Magistrate Judge Erred by concluding there was no Foreign Proceeding <u>"within reasonable contemplation" for which 1782 Relief was available</u>**

**(1)  There was credible evidence in the record that Foreign Proceeding was underway in in South Africa and that other investigations, proceedings and <u>future prosecutions were "within reasonable contemplation"</u>**

On February 5, 2019 when Application - DE 1 was filed, the only foreign proceeding I knew about was the proceeding in South Africa SAPS Case # 3471/1/2019.   In the Application, I explained that the Application is for use in a Foreign Proceeding that has *"already been filed in the Republic of South African and is under criminal investigation"*. DE 1, p. 5, ¶ 2.

DE 5 shows that the Magistrate Judge apparently misunderstood and thought I was requesting 1782 Relief to assist in gathering evidence that I needed to convince the South African authorities to investigate. I did not need to convince The SAPS to investigate.

As explained in my Supplemental Declaration - DE 4 (filed on Feb. 19th), the South African authorities (i) accepted the complaint (SAPS #3471/1/2019); (ii) started an investigation; (iii) moved the complaint from the local Police up to the Federal Police Services; (iv) assigned Capt. Eric Chiloane as Lead Investigator and (v) wanted me to return to South Africa to work with them, which I did on Feb. 27th.  In DE 4, I explained the following in detail to the Court:

- *I have just been informed that the investigation has now been re-assigned / taken up by the South Africa Police Services "HAWKS - Directorate for Priority Crime Investigation" (SAPS - DCPI). The Directorate for Priority Crime Investigation is now responsible for the combating, investigation and prevention of national priority crimes such as serious organized crime, serious commercial crime and serious corruption in terms of Section 1 7B and 1 7D of the South African Police Service Act, 1995 as amended.  See https://www.saps.gov.zaldpci/index.php 5. (¶ 4);*
- *I have been requested to come to the SAPS-DCPI Head Office located at Anti-Corruption Desk, A5 Promat Building, 1 Cresswell Road, Silverton, Pretoria to meet with Inspector Capt. Chiloane who has been assigned to take over the case. (¶ 5);*
- *SAPS=DCP Capt. Chiloane has requested that I make another more detailed statement so SAPS DCPI so it can expand the investigation to include the South African Ministry of Justice (http://www.dirco.gov.zalcontact.htm) and South African Bureau for Interpol (http://www.dirco.gov.zalcontact.htm).  I was told that SAPS DCPI intends to include investigators from the South African Ministry of Justice and*

*South African Interpol who will initiate further investigations and prosecutions into this money laundering and wire fraud scheme that is being run in part out of South Africa, which is international in scope and which has included things that occurred in this District. (¶ 6); and*

- *I am traveling to South Africa in the next two weeks and I will provide the Court with a further update on the status of the investigation and information about what the South African investigators believe will help them and which can he secured from the applications for judicial relief pursuant to 28 USC 1782 from Witness Banks and the Witness Account holders to assist in the South African Police, Department of Justice and Bureau for Interpol's investigations and eventual prosecutions. (¶ 7).*

DE 4 provided evidence to confirm that a foreign proceeding, to wit: SAPS Case # 3471/1/2019, existed; I did not need to convince the South African authorities to start an investigation; and the South African investigation was being expanded and I was requested to return to South Africa.  I filed DE 4 to keep the Court informed of the status of the Foreign Proceeding in South Africa before the Magistrate Judge issued a Report and Recommendation related to the 1782 Application – DE 1. [4]

Unfortunately, the Magistrate Judge did not wait for the update I promised to provide in DE 4, before issuing the R & R DE 5. I respectfully submit that had The Magistrate Judge waited a few extra days for my update as to the status of the South African foreign proceeding - SAPS # 3741/1/2019, the Magistrate Judge would have known that the South African proceeding existed, was being investigated and there would be future prosecutions and that there was no need for me to file certain other criminal complaints (as referenced in DE 1, p. 2, ¶ 2) including with the FBI.

As explained greater below in Section C, just before I left for South Africa, I learned that the FBI Field Office in New Orleans has had an active and ongoing investigation into the same fraud to which my partners and I fell victims and the FBI wanted me to assist them with documents and evidence.  *See Exhibit 2 - February 24, 2019 Email from FBI Special Agent*

---

[4]     From March 25 to 28, I will be back in South Africa to work with the SAPS investigators, the South African justice Department prosecutors, the South African Cyber Crimes investigators, the South African Interpol investigators and anyone else who Lead Investigator Capt. Chiloane wishes to include.

1    *Krista Bradford.*

2      Contrary to the findings in DE 5, I am not a *"self declared victim of a fraudulent*

3 *scheme"* trying *"to utilize Section 1782 in the hopes that (I) might possibly aid an investigation*

4 *by the South African Police at some point in the future"* complainant who is trying to get the

5 *South African Police Services to investigate and prosecute"*. See DE 5, p. 5, 1st ¶ 1st sentence. I

6 am an actual victim of fraudulent schemes and crimes that are under investigation by the South

7 African authorities (SAPS Case # 3471/1/2019), FBI New Orleans' Field Office and others.

8      As set forth in Exhibit 3, SAPS Case # 3471/1/2019 Lead investigator Capt. Eric

9 Chiloane (HAWKS – Directorate for Priority Crime Investigation) has confirmed in writing that

10 the South African authorities are investigating and intend to prosecute the South African woman

11 who operates the fake domain and emails addresses out of South Africa and all the

12 individuals/entities who are responsible for the crimes against me and my partners in SAPS

13 CASE # 3471/1/2019.  *See Exhibit 3, March 1, 2019 Email from Capt. Eric Chiloane.*

14      During my meetings in South Africa from February 28 – March 4, 2019, SAPS Lead

15 Investigator Capt. Chiloane told me that (i) SAPS Case # 3471/1/2019 is now part of their "419

16 Scam" Taskforce; (ii) SAPS Case # 3471/1/2019 is the biggest fraud investigation and will be

17 one of the most important prosecutions of its kind in South Africa; (iii) Capt. Chiloane's Unit

18 was established by the South African Police Services to deal with Nigerian fraud to which many

19 South Africa business people fall victim and (iv) SAPS Case # 3471/1/2019 is very important

20 because it is the first time that the South African Authorities have evidence that persons involved

21 with a "419 Scam" are actually living or can be found in South Africa and where portions of the

22 "419 Scam" are actually run out of South Africa.  Capt. Eric Chiloane also confirmed that a

23 prosecutor from the South African Attorney General's office is being assigned and he requested

----------------------------------------------------------------------------------------------------------

In Re: Application of Edward Fagan against pursuant to 28 U.S.C. § 1782 for Judicial Assistance . . .
Objections to February 28, 2019 Magistrate Judge's Report & Recommendation - DE 5 - *Page 8*

1    that I return to South Africa as soon as possible to assist in the investigation and prosecution.

2        Capt. Eric Chiloane has confirmed that The South African Police Services:
3        *"will appreciate the evidence that (I am) trying to secure from (my)*
4        *applications to the United States Courts and witnesses in the United States*
5        *to help (the South African authorities) in our investigation and future*
6        *prosecution of the individuals/entities who are responsible for the crimes*
7        *against (me and my partners)"*: See Exhibit 3
8
9    Contrary to the Magistrate Judge's belief and findings in DE 5:

10   •   there is an existing and ongoing criminal investigation – SAPS CASE # 3471/1/2019 in
11       South Africa (See Exhibit 3);

12   •   there will be future prosecutions in South Africa (See Exhibit 3); and

13   •   the evidence sought (i.e. "follow the money") is the most efficient way and may be the
14       best/only way to identify and prosecute the real persons/entities behind the crimes against
15       my partners and me.

16       The phrase "follow the money" in the Application DE 1, p. 3, ¶ 6, appears to have been
17   misunderstood by the Magistrate Judge who believed that my Application was "fishing
18   expedition" (DE 5, p. 3, 1st ¶ and p. 5, 1st full ¶), which it is not.  My meaning for "follow the
19   money", which was confirmed by SAPS Lead investigator Chief Chiloane, and the FBI and
20   "follow the money" means to follow the transfers to Johnbull Ejovi (named as beneficiary on the
21   12 transfers through an account at Chase Bank totaling $ 399,570.00 between November 2016
22   and August 2017 - DE 1, ¶ 31(b)(i), pp 10 – 11) and to CTS Global (named as beneficiary on the
23   1 transfer through the account at Citibank Bank (transfer for total of $10,000.00 - DE 1, p. 11, ¶
24   31(b) (ii)) so that the persons/entities behind, and who benefited from, the fraud and crimes
25   against my partners and me can be identified, located and prosecuted. [5]

---

[5]      SAPS Lead Investigator Capt. Chiloane and the FBI investigators confirmed that the concept of
"following the money" is one of the best, and may be the only, way to locate and identify the persons /

1    SAPS Lead Investigator Capt. Chiloane explained that (i) two individual witnesses

2    named in DE 1 from whom evidence is requested, to wit: Johnbull Ejovi and CTS Global and (ii)

3    the woman from South Africa Cynthia Medeiros who opened the fake domain names and emails

4    that were used to trick Applicant and my partners to transfer monies (DE 1, ¶ 21 (a)-(d), pp. 7-8)

5    are referred to by The SAPS as "runners".  Capt. Chiloane further explained that these "runners"

6    are usually nothing more than "fronts" used by the persons/entities behind and who benefit from

7    the fraud and these "runners" are used to open bank accounts (like Johnbull Ejovi's account at

8    Chase Bank and CTS Global bank account at Citibank, referenced at DE 1, pp. 10-11) and to do

9    other things like operate websites and sending emails (like the woman in South Africa).  The

10   bank accounts are used to receive monies that are solicited in part through fake email addresses

11   and domain names (like those owned or operated by Cynthia Medeiros as referenced at DE 1, pp.

12   6 – 8, pars. 21 – 23) and are part of the fraud and crime against my partners and me.   In most

13   instances, according to SAPS Lead Investigator Capt. Chiloane, (i) after the "runner" opens an

14   account or opens domain names or fake email accounts someone else takes control over the

15   accounts – remotely – and transfers the deposited monies onward to the persons / entities who

16   are the main beneficiaries behind the fraud and (ii) after the "runner" creates the fake domain

17   names and fake email accounts, someone else uses those email and domain addresses to send the

18   fake letters and documents and domain like the ones used against us.

19        According to SAPS Lead Investigator Capt. Chiloane, people like Johnbull Ejovi and

20   CTS Global may not even know who is really behind the fraud and crimes.  Further, after monies

21   are received in accounts such as Johnbull Ejovi's account at Chase Bank and CTS Global

22   Supply's account at Citibank, the monies are transferred on to other persons / entities.

entities involved with and who benefitted from the fraud that the South African authorities and FBI are
investigating and will prosecute in the future.

1      Therefore, the information and evidence from witnesses Chase Bank, Citibank, Johnbull

2   Ejovi and CTS Global, "following the money" may be the best and perhaps the only way to

3   locate the persons/entities behind and who benefitted from the fraud and crimes.

4      SAPS Lead Investigator Capt. Chiloane also informed me that the information and

5   evidence sought in DE 1 is directly related to the person in South Africa who created, owned and

6   operated the fake domain and email addresses used in the crimes against us.  Capt. Chiloane also

7   told me that the South African authorities will prosecute everyone involved that can be found in

8   South Africa, including persons / entities to whom the monies were transferred after they were

9   originally deposited into the accounts at Chase Bank and Citibank in 2017 and persons / entities

10  who can be located with the information from this Application as being connected to the crimes

11  being investigated and which will be prosecuted in South Africa SAPS Case # 3471/1/2019.

12      Lead Investigator Capt. Chiloane reviewed the proposed subpoenas (DE 1-2) which are

13  limited to (i) 12 transfers to the account on which Johnbull Ejovi is listed as beneficiary at Chase

14  Bank and (ii) 1 transfer to the account on which CTS Global is listed as the beneficiary at

15  Citibank.  Capt. Chiloane confirmed that the evidence sought in the proposed subpoeana is

16  precisely the type of information that is helpful to the South African investigating and

17  prosecuting authorities as it will assist investigation and should assist in locating the others who

18  are / were behind or benefitted from the fraud and crimes against us.

19      Contrary to the Magistrate Judge's findings in DE 5, there is sufficient evidence in DE 1

20  & 4 and in this Declaration to show:

21   •   This Application DE 1 is for use in the South African foreign proceeding SAPS Case #

22        3471/1/2019 as confirmed in the March 1, 2019 email has commenced an investigation

23        and will later prosecute those involved in the crimes (See DE 1 and Exhibit 3);

1    • This Application DE 1 is not a "fishing expedition" to try to identify possible targets or

2    responsible parties for a future case in South Africa;

3    • This Application DE 1 seeks limited evidence from the transfers of monies that are set

4    forth in DE 1, pp. 10-11, that is helpful to the South African authorities as they

5    investigate and prosecuted SAPS Case # 3471/1/2019 as against the South African

6    woman who owns, operates and controls the fake domain and email addresses that led to

7    the emails that directed the deposits into those accounts;

8    • The evidence to be secured from this Application DE 1 will also help the South African

9    authorities in SAPS Case $ 3471/1/2019 will also help locate and prosecute the persons/

10   entities who were behind and who benefitted from the crimes against my partners and

11   me, some of which crimes occurred within and some of which persons/entities behind the

12   crimes may be found in SAPS jurisdiction; and

13   • This Application seeks evidence that is neither overbroad nor unduly burdensome.

14   Instead the Application DE is narrowly tailored to 13 specific transfers in 2017 and this

15   evidence will assist as relates to the investigation and prosecution of Cynthia Medeiros

16   (who owned and operated the fake domain and email addresses as identified in SAPS

17   Case # 3471/1/2019) and the transfers out of the Chase and Citibank accounts will help

18   the South African authorities identify the persons/entities that were behind and that

19   benefited from the fraud to which my partners and I fell victim.

20   Unfortunately, the findings in DE 5 as related to SAPS Case # 3471/1/2019 and why

21   Application DE 1 was made, appear to have been based on misinterpretations of fact and the

22   evidence presented in DE 1 and DE 4, all of which confirmed the existence of a foreign

23   proceeding SAPS Case # 3471/1/2019 and referred to the filings of other criminal complaints

1    (some of which have been confirmed to already exist).

2         Had the Magistrate Judge waited a few business days after my filing of the Supplemental

3    Declaration DE 4 (and the promised updated report about the status of the South African

4    investigation and prosecution) before issuing R & R DE 5, I respectfully submit that the R & R

5    would have been different and would have recommended granting the 1782 Application – DE 1.

6    **C. Evidence in the Record that Additional Criminal Complaints Would be Filed**
7    **(Including with the FBI) and New Evidence That FBI New Orleans Field Office**
8    **is Investigating, Has Assigned Agents and an Assistant United States Attorney to**
9    **Assist in the FBI's Investigation and Prosecution and FBI is interested in**
10   **<u>receiving copies of the documents requested through this Application.</u>**
11

12        The Magistrate Judge misunderstood my statement in DE 1, p.2, ¶ 2 where I explained . .

13   . the evidence from this Application, *"will also be used in additional criminal complaints that*

14   *are being prepared and will be filed in the coming weeks, with among other entities, the Federal*

15   *Bureau of Investigation, Internet Crime Complaint Center (IC3)* <u>https://www.ic3.gov/default.aspx</u>

16   *and with the Royal Canadian Mounted Police and Canadian Anti – Fraud Center*

17   <u>http://www.antifraudcentre-centreantifraude.ca/fraud-escroquerie/index-eng.htm</u>*."*

18        My statement in DE 1, p. 2, ¶ 2 that the evidence from this Application "will be used in

19   additional criminal complaints" is / was intended to mean that this evidence from this

20   Application will support the foreign complaints.

21        Originally, I knew there was the foreign proceeding in South Africa (SAPS Case #

22   3471/1/2019).  I believed that other foreign proceedings existed.  I now know, but at the time DE

23   1 was filed I only suspected that there are other complaints and investigations in relation to the

24   fraud and crimes against my partners and me.  As explained below, these investigations are and

25   future prosecutions will be in South Africa, Canada, California and New Orleans.

26        The evidence sought in this Application will be used in / for all of those, in which I am an

1    "interested person" and have the right to submit evidence within the meaning of § 1782. See

2    *Bouvier v. Adelson* (In re. Accent Delight International Ltd.), 869 *F.3d* 121, 128 (2d Cir. 2017) -

3    Section 1782 relief and discovery is available for use in a proceeding in a foreign or international

4    tribunal where the applicant is a crime victim authorized to submit the discovery to the foreign

5    tribunal, but is not making a claim for damages therein)

6            At the time DE 1 was filed, based on information that was conveyed to me by my

7    partners / predecessors I thought other criminal complaints may have existed in Canada and the

8    US.  At that time, I did not know against whom, in what jurisdictions and what were the file

9    numbers for criminal complaints and investigations that were believed to be under way in

10   Canada or the United States.  I have since learned of the FBI investigation and the details of

11   those two other investigations in British Columbia Canada and Santa Clara, California. [6]

12           Shortly after DE 1 was filed, I learned that the FBI had an ongoing investigation related

13   to this Nigerian fraud and crimes against my partners and me and that FBI investigation included

14   some of the witnesses involved in this Application.  I received the FBI email (Exhibit 2) the day

15   before I left for my meetings in South Africa with South African Lead Investigator Capt.

16   Chiloane to work with them and provide further information for their investigation of SAPS Case

17   SAPS # 3417/1/2019.  The FBI email (Exhibit 2) arrived after my Supplement Declaration DE 4

18   was prepared/filed (informing the Court of the status of foreign proceeding SAPS Case #

19   3471/1/2019 and that an additional report would be filed after I returned from South Africa.

20           The FBI Special Agent informed me (i) that the FBI investigations and future prosecution

21   are related to the fraud and crimes to which my partners and I fell victim and (ii) that the reason

---

[6]        Only after filing DE 1, I learned there is/was (i) an RCMP investigation in British Columbia –
File # 2017-12425 – with Constable Andres Alford of the Fort Saint John Barracks assigned; and (ii) an
investigation in California at the REACT Task Force/Santa Clara County Sheriff's office, 70 West
Hedding Street, West Wing, San Jose, CA 95110 with Det. Cody Cogliandro (Badge # 2167) assigned.

1   the FBI reached out to me is because of Johnbull Ejovi was named in DE 1, in relation to the

2   account on which he is named as a beneficiary at Chase Bank (DE 1, pp. 10-11, ¶ 31(b)(i)(1-12).

3        Since the FBI February 24th email (Exhibit 2), the FBI has requested and I have provided

4   information through emails, phone calls and an in-person meeting on March 7, 2019.  During this

5   time, I learned from the FBI that they are interested in (i) other of the beneficiary individuals/

6   entities to which my partners and I made wire transfers, (ii) the evidence we have already, and

7   (iii) the evidence related to the ongoing South African investigation and prosecution of SAPS

8   Case # 3147/1/2019, all of which I was told would be helpful to the ongoing FBI investigation

9   and eventual prosecution by the Justice Department.

10       In the last few weeks, FBI Special Agent Bradford has used information/evidence

11  provided by me to inform the US Secret Service (i) that one part of the fraud committed against

12  us involved potential counterfeit documents issued on letterhead or using the mark of the FDIC

13  (DE 1, ¶ 21 (c)–(d), pp. 7-8) and (ii) that I was solicited to assist in what appears to be trafficking

14  of counterfeit US $ 100 bills (which of course I refused and immediately informed the FBI).

15       On March 7th, after my return from South Africa, I met the FBI Team in New Orleans,

16  which included Special Agent Krista Bradford, and AUSA Michael Rivera.  During that meeting,

17  FBI Special Agent Bradford and AUSA Rivera informed me that the information sought in the

18  proposed subpoena (DE 1-2) - related to the 12 transfers to the account on which Johnbull Ejovi

19  is listed as the beneficiary and the 1 transfer to the account on which CTS Global is listed as the

20  beneficiary - is the type of information that is most likely to lead the FBI (as it should lead the

21  South African authorities) to the others who were involved with, behind and/or benefitted from

22  the fraud / crimes against my partners and me.  At that meeting, The FBI New Orleans Field

23  Office Agents and AUSA also confirmed (i) that the FBI has an ongoing investigation into the

1  fraud and crimes similar to those committed against my partners and me; (ii) that although the

2  FBI does not comment on ongoing investigations itself or future prosecutions, the FBI wants my

3  assistance and (iii) that the specific evidence related to the 12 transfers totaling $399,570 that

4  during a 10 month period went through the account at Chase Bank on which Johnbull Ejovi and

5  the 1 transfer that went through the account at Citibank on which CTS Global is listed as

6  beneficiary that can be secured through the assistance of the US Courts and in this Application,

7  will be helpful to the FBI in its ongoing investigation and future prosecutions.

8      The § 1782 relief sought in this Application will also assist in my being able to provide

9  evidence to support the FBI in its investigation and future prosecution, in which I also have an

10  interest.  See *Bouvier v. Adelson* (In re. Accent Delight International Ltd.), 869 *F.3d* 121, 128

11  (2d Cir. 2017), supra.[7]

12  **IV.    ADDITIONAL AUTHORITY TO SUPPORT 1782 RELIEF**
13

14      **A.  District Court's De Novo Review of Record**
15

16      A party who files timely written objections to a magistrate judge's report and

17  recommendation is entitled to a de novo review of those findings or recommendations to which

18  the party specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2)-(3).  As

19  explained above, these Objections are filed before the March 19, 2019 due date and are timely.

20      **B.  Facts from DE 1, DE 4 and Authority from DE 1 are Incorporated Herein**
21

22      The facts upon which this Application should be granted include the facts set forth in DE

23  1, DE 4 and these Objections.

24      **C.  Further Authority to Support the Grant of § 1782 Relief**
25

---

[7]      The evidence will also assist the RCMP the Santa Clara County Sheriff's office in their investigations, in which I also have an "interest".  See *Bouvier v. Adelson* (In re. Accent Delight International Ltd.), 869 *F.3d* 121, 128 (2d Cir. 2017), supra.

1      The additional authority set forth below shows that, had The Magistrate Judge properly

2  interpreted the facts, she would have recommended the Application be granted.

3      The Magistrate Judge's misinterpretation of fact led to the following erroneous findings,

4  (i) Fagan *"has not demonstrated that the discovery sought is for use in a proceeding before a*

5  *foreign tribunal"* (DE 5, p. 2, last 2 lines, penultimate ¶); (ii) the documents *"Fagan attaches . . .*

6  *do not demonstrate that there is an actual criminal prosecution pending in South Africa related*

7  *to Fagan's allegations"* (DE 5, p. 3, 2nd ¶ (iii) Fagan's use of the phrase *"follow the money"*

8  shows that Fagan is trying to use § 1782 to gather evidence so that convince criminal authorities

9  in South Africa, the United States and Canada" to open investigations (See DE, p. 3, 1st ¶, 3rd

10  line); (iv) if a foreign proceeding in South Africa actually existed at the time DE 1 was filed,

11  Fagan would normally be entitled to § 1782 Relief, yet Fagan has not shown that the South

12  African foreign proceedings existed or that South African proceedings 'were within reasonable

13  contemplation'. (DE 5, p. 3, last ¶, 1st three lines); (v) Fagan's supplemental declaration (DE 4)

14  does not show that a South African proceeding is *"within reasonable contemplation"* and DE 4

15  *only shows that the authorities in "South Africa are doing their due diligence to determine*

16  *whether Fagan's complaint has any merit"* (DE 5, p. 4, 1st ¶) ; (vi) Fagan's 1782 Application is

17  that of *"a self-declared victim of a fraudulent scheme to utilize Section 1782 in the hopes it*

18  *might possibly aid an investigation by the South African Police at some time in the future . . .*

19  *(and is) . . . the very kind of 'fishing expedition' district Courts are counseled to guard against."*

20  *DE 5, p. 5, 1st full ¶*, 1st four line; and (vii) *"Fagan's request for extensive bank records and*

21  *account information is unduly burdensome"* (DE 5, p.5, last two lines before "Conclusion and

22  Recommendation").

23      The Magistrate Judge misunderstood the facts presented.  The Magistrate Judge also did

1    not wait the few days for my promised follow up report about the status of the South African

2    proceedings DE 4.  Instead, The Magistrate Judge recommended § 1782 relief be denied because

3    allegedly there was no evidence to show that certain § 1782 statutory requirements were met.

4              In fact, the evidence in the record, as is supplemental above, shows that:

5    •   At the time DE 1 was filed, there is / was a foreign proceeding is South Africa, to wit:

6         SAPS Case # 3471/1/2017 (See DE 1, DE 4 and Section III B. above);

7    •   At the time DE 1 was filed, an additional foreign proceeding also existed, to wit: The

8         Investigation by the FBI New Orleans Field Office (See Section III. C above);

9    •   At the time DE 1 was filed, other foreign proceedings also existed, to wit: the RCMP in

10       British Columbia and the Santa Clara Sheriff's Office investigations (See Section III. C

11       above and p. 14, fn. 6); and

12   •   The Application is not a "fishing expedition" in hopes of finding evidence with which to

13       convince the SAPS, the FBI, the RCMP or others to commence an investigation and

14       prosecution.  It is brought for the precise purposes contemplated by 1782 so as to gather

15       and provide evidence to assist the foreign investigating and prosecuting authorities (i.e.

16       The SAPS and FBI), who have said they would welcome to assist in their ongoing

17       investigation and future prosecutions (See Sections III B. and C. above);

18   •   The Evidence Requested from witnesses Chase Bank, Citibank, Johnbull Ejovi and CTS

19       Global Supply is not "unduly burdensome" but is instead very specific and limited to the

20       evidence related to the 12 transfers through an account at Chase Bank totaling $

21       399,570.00 between November 2016 and August 2017 (See DE 1, ¶ 31(b)(i), pp 10 – 11)

22       and to CTS Global (named as beneficiary on the 1 transfer through the account at

23       Citibank Bank (transfer for total of $10,000.00 (See DE 1, p. 11, ¶ 31(b) (ii)).  The

1   evidence will also the South African Authorities and the FBI in identifying the

2   persons/entities behind, and who profited from, the fraud and crimes against my partners

3   and me. (See DE 1 pp. 11-13, ¶¶ 32 to 41 and Section III. B & C above).

### D. § 1782 Relief Should be Granted – At the time DE 1 was filed there was an existing foreign proceeding in South Africa

7   The complaint Fagan made to the South African Police Services – Case # 3471/1/2019

8   was filed on January 26, 2019. DE 1.  Shortly thereafter, I learned that the investigation has been

9   assigned to Capt.  Eric Chiloane of SAPS - Serious Commercial Crimes Unit who requested that

10  I return to South Africa to give more evidence as the South African authorities wanted to include

11  others in their investigation and prosecution. See DE 4.   As was explained in greater detail in

12  DE 4, the complaint was accepted by South Africa Police Services and was assigned to Capt.

13  Chiloane of the Serious Commercial Crimes Unit "HAWKS - Directorate for Priority Crime

14  Investigation" and Capt. Chiloane requested that I return to South Africa to meet with them as

15  they wanted more information so they could expand the investigation to include investigators

16  from the South African Ministry of Justice and South African Interpol who would initiate further

17  investigations and prosecutions into Case # 3471/1/2019 and I would provide an update on the

18  status of the investigation and other information.  There was sufficient evidence for the

19  Magistrate Judge to conclude and now for the Honorable District Judge to conclude that a

20  foreign proceeding – SAPS Case # 3471/1/2019 – existed in South Africa when DE 1 was filed.

21      The Supreme Court standard for § 1782 relief requires the applicant to show that the

22  foreign proceeding is either pending or *within reasonable contemplation*." Intel Corporation v.

23  Advanced Micro Devices, Inc., Intel, 542 U.S. 241, 249 (2004). The applicant must present

24  reliable indications that the proceedings exist or of the likelihood that proceedings will be

25  instituted within a reasonable time." Halliwel Assets Inc v Hornbeam Corp. 663 Fed. Appx. 755

1   (11ᵗʰ Cir. Sept. 2016) Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d

2   113, 117 (2d Cir. 2015); Application of Consorcio Ecuatoriano de Telecomunicaciones S.A. v.

3   JAS Forwarding (USA), Inc., 747 F.3d 1262, 1270 (11th Cir. 2014); and In re Letter of Request

4   from the Crown Prosecution Serv. of the U.K., 870 F.2d 686, 692 (D.C. Cir. 1989).

5          At the time DE 1 was filed and as explained in DE 4, the South African foreign

6   proceeding SAPS Case # 3471/1/2019 existed.  The South African proceeding was not "just a

7   twinkle" in my eye or something I had to convince the South African authorities to accept and

8   investigate.  As explained in DE 4, SAPS Case # 3471/1/2019 had been accepted; it was being

9   investigated and it was being expanded to include the SAPS – Serious Commercial Crimes Unit,

10  SAPS Cyber Crimes Unit, South African Attorney General's office and the South African

11  Bureau of Interpol.  The status of SAPS Case # 3471/1/2019 investigation and prosecution was

12  explained above in DE 4.  As explained above in Section III B., SAPS Case # 3471/1/2019 is one

13  of the most important cases for them in South Africa and the South African authorities welcome

14  this Court's assistance in providing the very specific evidence that is sought in this Application

15  with which the South African Authorities (and others) can "follow the money" to identify the

16  main persons/entities behind and who benefitted from the crimes against my partners and me.

17         As explained in Section III C above, additional foreign proceedings, including the FBI

18  New Orleans Field Office, the RCMP out of the Fort Saint John Barracks and the Santa Clara

19  Sheriff's office, investigations also existed at the time DE 1 was filed.

20         DE 1 requesting § 1782 Relief was based upon the confirmation that an actual foreign

21  proceeding SAPS Case # 3471/1/2019 existed and DE 1 also provided reliable indications that

22  other future proceedings will also be instituted within a reasonable time. DE 4 also confirmed the

23  existence of the South African foreign proceeding SAPS Case # 3471/1/2019. As such there

1  were foreign proceedings in existence or which were contemplated and would be filed within a

2  reasonable time.  See Bravo Express Corp. v Total Petrochemicals & Refining USA, Inc. 613

3  Fed. Appx. 319 (5th Cir. June 2, 2015), citing Tex. Keystone v Prime Natural Res. Inc., 694 F. 3d

4  548 (5th Cir. 2012); *Certain Funds, Accounts And/or Inv. Vehicles Managed by Affiliates of*

5  *Fortress Inv. Grp. LLC v. KPMG, LLP*, 798 F.3d 113, 124 (2d Cir. 2015) (requirement for

6  proceeding within reasonable contemplation is satisfied by showing that the proceeding is not

7  speculative, is "more than just a twinkle in counsel's eye); In re Application of Ontario

8  Principals' Council, No. MC- 14-00050-PHX-SPL, 2014 WL 3845082, at *2 (D. Ariz. Aug. 1,

9  2014) and In Re Ambercroft Trading Ltd. Case No. 18-mc-80074-KAW (CAND - Decided Oct

10  3, 2018)(1782 Relief may be granted so long as there is reliable information that such

11  proceedings will be commenced.

12        Furthermore, as the South African authorities investigate and prosecute SAPS Case #

13  3471/1/2019 and the FBI and other authorities investigate and "follow the money", future

14  criminal proceedings <u>will</u> be filed against those persons/entities behind and who benefitted from

15  the crimes against my partners and me.  As victims of the crimes that are being investigated and

16  will in the future be prosecuted in South Africa, New Orleans, British Columbia and/or Santa

17  Clara, California, my partners and I are entitled to § 1782 Relief, even if without having to file

18  damage claims in or through the South African, New Orleans, British Columbia or Santa Clara

19  California proceedings.  See Bouvier v. Adelson, supra.

20  **E.  § 1782 Relief Should be Granted – At the time DE 1 was filed there were**
21  **other foreign investigations including FBI Field Office in New Orleans,**
22  **<u>RCMP in British Columbia and the Santa Clara Sheriff's Office</u>**
23
24        The authority that supports the granting of 1782 Relief based on the existing South

25  African foreign proceeding SAPS Case # 3471/1/2019, also supports the granting of 1782 Relief

1   applies to the foreign proceedings by the FBI New Orleans Field Office, the RCMP out of the

2   Fort Saint John Barracks in British Columbia and Santa Clara, California Sheriff's Office.

3   Furthermore, should the person/entities who/which are behind and who/which benefitted from

4   the crimes against my partners and me, be discovered through this Application, Section 1782

5   does not preclude, my partners and my using the evidence secured through this Application for

6   use in subsequent damages litigation, including in the United States.  See Glock v Glock Inc.,

7   797 F.3d 1002 (11th Cir. 2015).

8   **F.  1782 Relief Should Be Granted - Application is not a "fishing expedition"**
9

10   DE 1 was not filed in hopes of finding evidence with which to convince the SAPS, the

11   FBI, the RCMP or others to commence an investigation and prosecution.  DE 1 was filed for the

12   purposes contemplated by § 1782, to wit: to assist in gathering and providing evidence to assist

13   the foreign investigating and prosecuting authorities, especially those (like the SAPS and the

14   FBI) who have said they would welcome any evidence that can be provided through this

15   Application that could assist in their ongoing investigation and future prosecutions.  See In re

16   Penner, No. 17-CV-12136-IT, 2017 WL 5632658 (D. Mass. Nov. 22, 2017) (confirmation that

17   foreign proceeding are willing to accept evidence).

18   As explained in DE 1 as related to the South African foreign proceeding SAPS Case #

19   3471/1/2019 and as further explained above Section III, this Application will (i) assist the South

20   African Investigators and Prosecutors in SAPS Case # 3471/1/2019) (See Section III. B); (ii) will

21   assist the FBI Special Agents and AUSA out of New Orleans in their investigation (See Section

22   III - Section C); (iii) will assist the investigation referred to at p. 15, ¶ 5 with the RCMP in

23   British Columbia – File # 2017-12425 – Constable Andres Alford of the Fort Saint John

24   Barracks; and (iv) will assist the investigation in California at the REACT Task Force/Santa

1   Clara County Sheriff's office - Det. Cody Cogliandro (Badge # 2167) (See p. 14, fn. 6 above)

2   and will help in the existing investigations and prosecutions and will help identify person/entities

3   who were behind and who benefitted from the fraud and crimes against my partners and me.

4
5   ### G. § 1782 Relief Should Be Granted as Evidence Sought is not unduly burdensome

6       The only reference and use of the words "unduly burdensome" in DE 5 is at p. 5, the last

7   sentence before the "Conclusion and Recommendation". There the Magistrate Judge wrote: "In

8   light of these concerns, Fagan's request for extensive bank records and account information is

9   unduly burdensome". DE 5 contains is no analysis of the bank records and account information

10  requested from the witnesses and related to the 13 transfers set forth in DE 1, ¶ 31(b)(i), pp 10 –

11  11 and DE 1, p. 11, ¶ 31(b) (ii).   DE 5 failed to recognize that the proposed subpoenas (DE 1-2)

12  were expressly limited to the 12 transfers to Johnbull Ejovi (named on account at Chase Bank)

13  totaling $ 399,570.00 between November 2016 and August 2017 - DE 1, ¶ 31(b)(i), pp 10 – 11)

14  and the 1 transfer to CTS Global (named as beneficiary on the 1 transfer through the account at

15  Citibank Bank) for total of $10,000.00 - DE 1, p. 11, ¶ 31(b).

16      The proposed subpoenas (DE 1-2) and evidence requested through DE 1 is narrowly

17  tailored to issues and facts relevant and helpful to the SAPS Case # 3471/1/2019 and now as it

18  turns out the FBI investigation. See Leg Q LLC v RSR Corp., No. 3:17-cv-1559-N-BN, 2017

19  WL 3780213 at * 8 (N.D. Tex. Aug. 31, 2017.

20      The evidence requested in DE 1 is consistent with the principles as set forth in FRCP 26

21  and 45 and the fourth Intel factor which provides that evidence requests must be relevant and

22  proportional to the needs of the case. See In re Ex Parte Glob. Energy Horizons Corp., 647 F.

23  App'x 83, 85-86 (3d Cir. 2016).

24      Finally, as also noted above, § 1782 relief may be the only way that evidence may be

1  obtained for use in the South African proceeding Case # 3471/1/2019, as it is from witnesses

2  who are not within the jurisdictional boundaries of the South African authorities. See Intel

3  Corporation v. Advanced Micro Devices, Inc., Intel, 542 U.S. 241, at 259 to 264.

4      As such the 1782 Application should have been and should still be granted.

5
6      **H. Should the Court Wish, Applicant is Prepared to Submit an Amended § 1782
7  Petition to Include the References to the Existing FBI, RCMP and Santa Clara
8  <u>Sheriff's Office Investigations to Further Support the Relief Requested</u>**

9      I ask the Court to incorporate into DE 1, the facts set forth above in Section III B. & C

10  related to the South African foreign proceeding SAPS Case # 3471/1/2019, as well as the FBI,

11  RCMP and Santa Clara Sheriff's Office investigations.  However, should the Court deem it

12  appropriate or necessary to include these facts into an amended Application pursuant to 28 USC

13  § 1782, I am prepared to do so.

14  **V.    <u>CONCLUSION</u>**

15      **WHEREFORE,** in view of the foregoing, Applicant prays (i) that the Magistrate Judge's

16  February 28, 2019 Report and Recommendation be overruled; (ii) that the Court grant the

17  Application directing / permitting the issuance of subpoenas duces tecum to The Witness Banks

18  and The Witness Account Holders to appear, testify and/or produce the limited categories of

19  testimony, information, documents, information and records and limited to the specific account

20  and specific transfers into and out of the specific account identified herein; (iii) if necessary

21  permit the filing of an Amended Application to incorporate the facts about the FBI, RCMP and

22  Santa Clara Sheriff's office investigations upon which the Order granting § 1782 Relief can be

23  made; and (iv) for such other and further relief as is just and appropriate and consistent with 28

24  U.S.C. § 1782.

25

1
2
3
4    Dated: March _____ , 2019
5
6
7
8
9
10
11

Respectfully submitted,

/s/ *[signature]*

Edward D. Fagan, Pro Se
590 NE Wavecrest Way
Boca Raton, FL. 33432
Tel. (561) 757-5432
Email: faganinternational@gmail.com
Applicant Pro Se